**PROCARE REHAB SERVICES OF COMMUNITY HOSPITAL,**
Appellant–Defendant,

v.

Janice S. VITATOE, Appellee–Plaintiff.

No. 49A02–0707–CV–583.

Court of Appeals of Indiana.

June 18, 2008.

Robert G. Zeigler, Karen L. Withers, Zeigler Cohen & Koch, Indianapolis, IN, Attorneys for Appellant.

Thomas D. Strodtman, Indianapolis, IN, Attorney for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Community Hospitals of Indiana, Inc. ("Community"), appeals from the denial of its motion to dismiss Janice S. Vitatoe's complaint against ProCare Rehab Services of Community Hospital ("ProCare") for lack of subject matter jurisdiction. We reverse and remand.

### Facts and Procedural History

The relevant facts are undisputed. Vitatoe was employed by Community as a registered nurse. On April 14, 2002, during her shift and while on corporate premises, Vitatoe slipped and fell and injured her right hamstring. The next day, she began treatment with Dr. Nimu Surtani, an orthopedic surgeon at Central Indiana Orthopedics, P.C. As part of her treat-

ment, and presumably as prescribed by Dr. Surtani, Vitatoe underwent outpatient physical therapy at ProCare's facility on October 28 and November 25, 2002. ProCare is a department of Community and is not a separate legal entity. The physical therapists and athletic trainers at ProCare were Community employees. After the physical therapy sessions, Vitatoe's progress and the physical therapist's recommendations were reported to Dr. Surtani.

On May 28, 2003, Vitatoe filed a worker's compensation claim against Community, which alleged in pertinent part as follows:

> Claimant sustained injury and has been rated MMI/PPI; additional conditions have neither been addressed in diagnostic nor rehabilitative treatment. Such conditions are progressively worsening.
>
> . . . .
>
> Minimal diagnostic treatment and no surgical intervention was provided for subject injury culmination in 10% PPI rating. Additionally, complaints of secondary conditions were ignored by physicians.

Appellant's App. at 23–24.

Vitatoe's employment with Community ended on February 23, 2004. On April 7, 2004, Vitatoe filed with the Indiana Department of Insurance a proposed medical malpractice complaint alleging negligence on the part of, *inter alia*, Dr. Surtani, Central Indiana Orthopedics, and ProCare. Specifically, Vitatoe alleged that she

a. Did not have proper care for her complete hamstring tear. She should have had further imaging studies, (either CT in the acute phase or MRI in the subacute phase), to verify the severity of her injury.

b. This should have been followed by surgical repair and appropriate rehabilitation.

c. [She] had negligent initial care compounded by prolonged ineffective therapy that eventually has resulted in chronic pain and severe disability.

d. Correct diagnosis and surgical intervention at the outset of her injury could have avoided [her] injury.

*Id.* at 27.

On November 2, 2006, Vitatoe and Community stipulated and agreed to a full and final settlement of her worker's compensation claim, in which Vitatoe released Community from any further claims under Indiana's Worker's Compensation Act ("the Act"). The Indiana Worker's Compensation Board ("the Board") approved the settlement twelve days later.

On December 8, 2006, Community moved to dismiss Vitatoe's proposed medical malpractice complaint for lack of subject matter jurisdiction pursuant to Indiana Trial Rule 12(B)(1), asserting that Vitatoe's exclusive remedy against Community, her former employer, was under the Act. Vitatoe filed a reply. On April 10, 2007, the trial court summarily denied Community's motion to dismiss. This interlocutory appeal ensued.

## Discussion and Decision

■ In *GKN Co. v. Magness*, our supreme court stated,

> When an employer defends against an employee's negligence claim on the basis that the employee's exclusive remedy is to pursue a claim for benefits under the Indiana Worker's Compensation Act, the defense is properly advanced through a motion to dismiss for lack of subject matter jurisdiction under Indiana Trial Rule 12(B)(1). In ruling on a motion to dismiss for lack of subject matter jurisdiction, the trial court may consider not

only the complaint and motion but also any affidavits or evidence submitted in support. In addition, the trial court may weigh the evidence to determine the existence of the requisite jurisdictional facts.

. . . .

If the facts before the trial court are not in dispute, then the question of subject matter jurisdiction is purely one of law. Under those circumstances no deference is afforded the trial court's conclusion because appellate courts independently, and without the slightest deference to trial court determinations, evaluate those issues they deem to be questions of law. Thus, we review *de novo* a trial court's ruling on a motion to dismiss under Trial Rule 12(B)(1) where the facts before the trial court are undisputed.

744 N.E.2d 397, 400–01 (Ind.2001) (citations and quotation marks omitted).

The Act provides that every employer shall pay and that every employee shall accept "compensation for personal injury or death by accident arising out of and in the course of employment, and shall be bound thereby." Ind.Code § 22–3–2–2(a). "To receive worker's compensation benefits, a claimant must prove both elements." *Kehr Mid–West Iron v. Bordner,* 829 N.E.2d 213, 215 (Ind.Ct.App.2005).

The Act contains the following exclusivity provision:

> The rights and remedies granted to an employee subject to IC 22–3–2 through IC 22–3–6 on account of personal injury or death by accident *shall exclude all other rights and remedies of such employee,* the employee's personal representatives, dependents, or next of kin, *at common law or otherwise,* on account of such injury or death, except for remedies available under IC 5–2–6.1.

Ind.Code § 22–3–2–6 (emphases added). According to our supreme court,

> This statute limits an employee whose injury meets the jurisdictional requirements of the Act to the rights and remedies provided therein. Accordingly, if an employee's injury occurred by accident arising out of and in the course of employment, then the employee is entitled to worker's compensation benefits. *The exclusivity provision bars a court from hearing any common law action brought by the employee for the same injuries.* However, the Act permits an action against third party tortfeasors, so long as the third party is neither the plaintiff's employer nor his fellow employee. [Ind.Code § 22–3–2–13].

*Sims v. U.S. Fid. & Guar. Co.,* 782 N.E.2d 345, 349–50 (Ind.2003) (some citations omitted) (emphasis added).

The parties do not dispute that Vitatoe's original hamstring injury was accidental and arose out of and in the course of her employment with Community. Also, they do not dispute that the injuries that form the basis of Vitatoe's medical malpractice claim were accidental. Citing *McDaniel v. Sage,* 174 Ind.App. 71, 366 N.E.2d 202 (1977), Community argues that those injuries arose out of and in the course of her employment and that therefore her medical malpractice claim against Community is barred pursuant to Indiana Code Section 22–3–2–6.

In *McDaniel,* a life insurance company employee sought treatment from his employer's on-site medical staff for non-work-related weakness and lightheadedness. The employer's physician ordered an injection, which was administered by his nurse and allegedly injured the employee. The employee sued his employer, the physician, and the nurse for medical malpractice, and the trial court dismissed his claim against his employer for lack of subject matter

jurisdiction. The employee appealed the trial court's ruling. The *McDaniel* court noted that

[a]s a general rule, if an employee receives medical attention for an injury which arose out of and in the course of his employment, new injury or aggravation of the injury under treatment, as a result of that treatment, has been considered as arising out of and in the course of the employment for workmen's compensation coverage.[1] This general rule has been followed in Indiana even when the aggravation of a work related injury is caused by medical malpractice.

In *Seaton v. United States Rubber Co.*[, 223 Ind. 404, 61 N.E.2d 177 (1945)], the Indiana Supreme Court affirmed the trial court's sustaining of a demurrer to the employee's complaint against the *employer.* Because the employee had failed to elect to pursue his common law remedy (which was possible at that time), the *Seaton* court held the Act provided the exclusive remedy against the *employer* as the malpractice was merely an aggravation of a work related injury.

In this case, however, the illness precipitating the medical treatment was not job related in any manner. By emphasizing the nature of the original illness, McDaniel attempts to make coverage under the Act, for later additional injury resulting from treatment, dependent on whether the original illness was employment related.

*Id.* at 73–74, 366 N.E.2d at 204 (footnotes omitted).

Ultimately, the *McDaniel* court concluded that

in seeking medical care provided by [the employer] for his non-work related ill-ness, [the employee] temporarily departed from his work, and the resulting injury was in the course of his employment. Further, we conclude that although there are no Indiana cases directly in point, seeking medical care from a company physician located on the premises, even for a non-work related illness or injury, is so incidental to employment as to be considered to have arisen out of the employment. The services supplied by the employer in such a circumstance are reasonably necessary for the health, comfort, and convenience of workmen.

*Id.* at 75–76, 366 N.E.2d at 205. As such, the court held that the employee's exclusive remedy against the employer was under the Act. The court specifically expressed no opinion regarding whether an independent action existed against the physician and the nurse. *Id.* at 72 n. 1, 366 N.E.2d at 203 n. 1.

In *Seaton*, cited by the *McDaniel* court, an employee pushing a loaded cart accidentally ran into a hole in the factory floor. The cart tipped and knocked the employee into a table, injuring her right side and hip. The company's on-site physician downplayed the employee's injuries and told her to apply liniment and return to work the next day. She followed these instructions but remained in great pain. The physician continued to minimize the employee's injuries and waited over a month to take x-rays, after which the employee was hospitalized.

The employee filed a common law action against her employer and the physician, alleging that she received negligent treatment for her original injuries, which worsened and crippled her. Both the employer and the physician filed demurrers to the employee's complaint, asserting that the "malpractice merely constituted an aggra-

---

**1.** In support of this statement, the *McDaniel* court cited, *inter alia,* section 6.19 of Dean Ben F. Small's worker's compensation treatise mentioned later in this opinion.

vation of the original injury" and that the employee's only remedy was under the Act. 223 Ind. at 410, 61 N.E.2d at 179. The trial court sustained the demurrers and entered judgment for both defendants.

On appeal, our supreme court affirmed the trial court's ruling as to the employer, stating,

> From the facts pleaded in this complaint there can be but one conclusion, and that is that the [employee] comes squarely within the provisions of [the Act], and that her sole remedy, in so far as the [employer] is concerned, must be found within the terms of said act, as said complaint nowhere contains the necessary allegation that either the [employer] or the [employee] had rejected the provisions of said act. No rejection having been pleaded in her complaint, she and the [employer] are presumed to have accepted the terms and provisions of the same.
>
> The fact that [the employee] alleges in her complaint that she is suffering from an occupational disease caused by [the employer's] negligence which is not compensable under the Occupational Dis-

eases Act or the Workmen's Compensation Act lends nothing to this complaint, as all of the allegations in the complaint directly and clearly show that [the employee] is attempting to recover damages resulting from personal injuries caused by accident, arising out of and in the course of the employment of [the employee] by [the employer], and therefore her sole remedy against [the employer] under the facts pleaded is defined by [the Act]. It matters not, when an injury to an employee is caused by an accident, arising out of and in the course of his employment, whether said accident was caused by the negligence of the employer, or otherwise.

*Id.* at 411–12, 61 N.E.2d at 179–80 (citations omitted). The *Seaton* court reversed the trial court's ruling as to the physician, however, concluding that the employee's complaint sufficiently alleged a medical malpractice claim and that the Act did not bar claims against a physician, "whether hired by the employer or not[.]" *Id.* at 414, 61 N.E.2d at 181 (citing predecessor to Ind.Code § 22–3–2–13).[2]

---

2. When *Seaton* was decided in 1945, the predecessor to Indiana Code Section 22–3–2–13 did not specifically bar third-party claims against fellow employees. The legislature subsequently amended the statute to preclude such claims in certain circumstances. *See* Ind.Code § 22–3–2–13 ("Whenever any injury or death, for which compensation is payable under [the Act] shall have been sustained under *circumstances creating in some other person than the employer and not in the same employ* a legal liability to pay damages in respect thereto, the injured employee, or his dependents, in case of death, may commence legal proceedings against the other person to recover damages notwithstanding the employer's or the employer's compensation insurance carrier's payment of or liability to pay compensation under [the Act].") (emphasis added). In *Ross v. Schubert,* 180 Ind.App. 402, 388 N.E.2d 623 (1979), *trans. denied* (1980), this Court held that the amended ver-

sion of Indiana Code Section 22–3–2–13 did not bar medical malpractice claims against company physicians, given that physicians operate as independent contractors when exercising their medical judgment. The *Ross* court further stated,

> When the legislature amended IC 22–3–2–13, they must be deemed to have been cognizant of the [supreme] court's determination [in *Seaton* ] that physicians employed by corporations were liable as third parties, and in light of this knowledge, they retained the employee's right to proceed against a third party. Thus, the common law right of an injured employee to maintain an action against a physician for malpractice remained unaltered because it was not expressly or by necessary inference curtailed or denied.

*Id.* at 408, 388 N.E.2d at 628 (footnote omitted).

Returning to the instant case, Vitatoe attempts to distinguish *McDaniel* on the basis that she did not receive the allegedly negligent treatment on her employer's premises immediately after she was injured, but rather at a separate facility six months thereafter. Therefore, Vitatoe argues, the injuries that form the basis of her malpractice claim did not arise out of and in the course of her employment. In other factual contexts, our supreme court has stated that "[a]n injury 'arises out of' employment when a causal nexus exists between the injury or death and the duties or services performed by the injured employee." *DePuy, Inc. v. Farmer,* 847 N.E.2d 160, 164 (Ind.2006), and that "[a]n accident occurs 'in the course of' employment when it takes place at the time and place of a person's employment while an employee is fulfilling his duties." *Bertoch v. NBD Corp.,* 813 N.E.2d 1159, 1161 (Ind. 2004).

In *McDaniel,* the court quoted an Indiana worker's compensation treatise that states, " 'Wherever an accidental injury requires medical attention, *any* results of such attention which may be harmful are compensable as the proximate results of the injury. In cases where first aid is attempted, the result is the same.' " 174 Ind.App. at 73 n. 3, 366 N.E.2d at 204 n. 3 (quoting B. SMALL, WORKMEN'S COMPENSATION LAW OF INDIANA, § 6.19 at 149–50 (1950)) (emphasis added); *see also* SMALL, § 6.21 at 156 ("As long as the need for the [medical] care is occasioned by an accident arising out of and in the course of the employment, its results are attributed to the employment so far as the right to compensation is concerned. The same is true of first aid and its results.") (footnoted citations omitted).

In one of the cases cited in sections 6.19 and 6.21 of Dean Small's treatise, *Victor Oolitic Stone Co. v. Crider,* 106 Ind.App. 461, 19 N.E.2d 478 (1939), an employee bumped his head while working on December 7, 1937, and thereafter suffered from dizziness, head and neck pain, double vision, and a staggering gait. The employee received treatment both from his employer's physician in Bloomington and at a hospital in Indianapolis. The employee died on February 8, 1938, from meningitis caused by a spinal puncture that occurred during his treatment. The evidence before the *Crider* court was "entirely inconclusive on the question as to who made the spinal puncture." *Id.* at 466, 19 N.E.2d at 480. Nevertheless, the court determined that the evidence was sufficient to sustain the Board's conclusion that a causal connection existed between the employee's head injury and his death and noted that "[i]n order to be compensable, such injury, where there is such causal connection, need not be the sole cause of the death but need only to be a contributing or concurring cause." *Id.* at 467, 19 N.E.2d at 480.

■ Although neither *McDaniel, Seaton,* nor *Crider* is factually or procedurally on all fours with this case, taken together they stand for the proposition that, if an employee's injury that arose out of and in the course of her employment is aggravated by treatment for that injury, regardless of where, when, by whom, and for how long the treatment was provided, the injury caused by the treatment shall be deemed as a matter of law to have arisen out of and in the course of her employment for purposes of the Act; as such, the employee's exclusive remedy against her *employer* for the injury caused by the treatment is under the Act.

In contending otherwise, Vitatoe attempts to resurrect the dual-capacity doctrine, in which

an employee is allowed to maintain a separate cause of action against his employer where the employer occupies, in

addition to his capacity as an employer, a second capacity that confers upon him obligations independent of those imposed upon him as an employer.

The justification for the imposition of liability under the dual capacity doctrine notwithstanding the receipt of worker's compensation benefits is that an employer may breach a duty which does not arise out of the employer-employee relationship. In other words, an employer may cause an injury in a role other than the role of employer. An example is where the defendant employer is engaged in the manufacture and sale of an allegedly defective product to the public. If an employer acts in a second capacity such as the manufacturer of injury-causing equipment, then worker's compensation may not be employee's exclusive remedy against employer.

*Seaton–SSK Engineering, Inc. v. Forbes,* 639 N.E.2d 1048, 1049–50 (Ind.Ct.App. 1994) (citations to cases from other jurisdictions and quotation marks omitted).

The dual-capacity doctrine has been rejected by both this Court and the Seventh Circuit Court of Appeals. *See, e.g., id.* at 1050 (recognizing prior rejection of doctrine); *Needham v. Fred's Frozen Foods, Inc.,* 171 Ind.App. 671, 674, 359 N.E.2d 544, 545 (1977) (holding that employee could not sue employer as manufacturer of pressure cooker that exploded while employee was cleaning it at work; "The clear and unambiguous language of the Act precludes our adoption of the dual capacity doctrine as advocated by [the employee]. If a change in the law is to be made in this respect, such must be by Act, or at least by authorization, of the General Assembly.") (citing *Kottis v. U.S. Steel Corp.,* 543 F.2d 22 (7th Cir.1976), *cert. denied* (1977)), *trans. denied; Kottis,* 543 F.2d at 24 (holding that administratrix of employee's estate could not sue employer as owner of land and manufacturer of crane on which fatal accident occurred; "[Administratrix's dual-capacity] argument does considerable violence to the statutory language [of Ind. Code § § 22–3–2–6 and –13], which abrogates 'all other rights and remedies … at common law or otherwise, on account of such injury or death' except those against 'some other person than the employer and not in the same employ.' ").

Vitatoe claims that her situation is unique because "she was foremost a patient at the time of the injury, facing the same risks of medical negligence faced by any patient receiving rehabilitative treatment from Procare Rehab." Appellee's Br. at 11. Based on the aforementioned precedent regarding the dual-capacity doctrine and the aggravation of an employee's work-related injuries, as well as the plain language of Indiana Code Section 22–3–2–6, we find this to be a distinction without a meaningful difference. Consequently, we reverse the denial of Community's motion to dismiss Vitatoe's proposed medical malpractice complaint for lack of subject matter jurisdiction and remand for further proceedings consistent with this opinion. We express no opinion as to the viability of Vitatoe's claims against the remaining defendants.

Reversed and remanded.

BRADFORD, J., concurs.

BARNES, J., concurs with separate opinion.

BARNES, Judge, concurring.

I concur with the majority's analysis and agree that the outcome here is dictated by precedent. That does not mean that I believe such an outcome is logical or fair.

The proposition that merely because an injured employee is treated at a facility that has links to the employment site where the original injury was sustained, he or she is prohibited from bringing a sepa-

rate action for neglectful or reckless care makes no sense to me. If that employee was treated at a facility where there was no such link, his or her ability to bring a separate action would be considerably enhanced. This result seems to single out hospital or healthcare provider employees for unequal treatment under the Act. It appears a construction worker injured on the job, for example, would not be precluded from bringing a malpractice action if he or she received negligent aftercare from a healthcare provider. *See Seaton*, 223 Ind. at 414–15, 61 N.E.2d at 181.

As the majority points out, however, our precedent is very strict regarding the genesis of the injury and leads necessarily to the conclusion that under facts such as these, Vitatoe's exclusive remedy against Community for injury caused by her treatment that exacerbated her workplace injury is under the Act. Perhaps our legislature will examine what I consider to be this inequity in the future.